Stewabt, J.
On September 24, 1952, Schaefer sent a purchase order to plaintiff, which reads, in part, as follows:
“Furnish one boiler to produce a maximum of 17,000 lbs. of steam per hour and necessary fittings, equipment and one lot of spare parts as per your quotation of Sept. 22, 1952. Dean[e] O. Strickler and Associates will complete the boiler assembly on the job site but the placement of the boiler is to be carried out by Schaefer Bros. Schaefer Bros, will do all of the piping and electrical work to and from this unit, however, not within the unit consisting of the oil burner, controls, pumps, etc.
“Rental of $1,500 per month shall be payed [sic] from the date the boiler leaves Baltimore, Md. to the date it arrives back in Baltimore. Freight charges shall be payed [sic] by Schaefer Bros. Schaefer Bros, will pay for only the portion of the months in which the boiler is in their hands.
*426 “Payment of rental charges shall he made monthly in advance.”
Schaefer received the boiler, used it, paid the monthly rent through May 1953, and on May 11, 1953, shipped the boiler via the railroad from Akron, consigned to plaintiff in Baltimore.
The boiler arrived in Baltimore on May 25 in a damaged condition and it is conceded that the reasonable cost of repairs of the boiler amounts to $1,575. The railroad concedes that it owes this sum because of the damage to the boiler, but Schaefer contends that the railroad owes that sum and $925 in addition upon Schaefer’s claim that it paid to plaintiff $2,500 to cover the cost of repairs to the boiler and the loss of use thereof.
On June 22, 1953, Schaefer gave a check and voucher to plaintiff in the sum of $1,500. Schaefer contends that this payment was for damage to the boiler, but plaintiff contends, and the trial court so found, that the $1,500 was in payment of rent for June in answer to a letter from plaintiff to Schaefer of June 1 demanding rent and asserting that the rental basis continued until the boiler was returned in good condition.
The part of the voucher of June 22 retained by Schaefer shows a notation that the payment of the $1,500 was for “damages to equipment,” but it is admitted that this notation was placed on the retained part of the voucher after the voucher and check had been given to plaintiff. Likewise, a check for $1,000, together with a voucher, was handed to plaintiff by Schaefer on July 22, 1953, the voucher bearing the notation, “payment to apply as credit to our a/c.”
Schaefer contends that this check was to make up the $75 to be added to the June check to cover the cost of repairs to the boiler, leaving $975 as payment for loss of use thereof. However, plaintiff contends, and the trial court so found, that the $1,000 payment was for the July rent, since the repairs to the boiler had been completed on or about July 22.
The trial court held that plaintiff is entitled to no further payment of rent, obviously for the reason that the contract between plaintiff and Schaefer provides that the rent should be paid for only the portion of the months in which the boiler was in Schaefer’s hands. Plaintiff took no appeal from that holding.
*427 It is true that Schaefer produced testimony to the effect that the $1,500 and $1,000 payments werp made for the damages resulting to plaintiff by the condition of the boiler when it reached plaintiff’s hands. However, the letter of June 1 from plaintiff to Schaefer demanding rent was followed by the payment of it, and in its claim filed against the railroad Schaefer said: “Under our contract we have agreed to pay $1,500 per month rental until the boiler is put back in working order so our expenses are continuously being increased.”
Obviously, these facts led the trial court to the conclusion that the payments of $1,500 and $1,000 in June and July by Schaefer to plaintiff were for rent of the boiler, under the assumption of liability for rent until the boiler was in good condition.
A perusal of the written agreement between Schaefer and plaintiff fails to show any obligation on Schaefer’s part to pay any rent after the boiler arrived in Baltimore, unless it is assumed that it must be read into the contract that the rent should continue until the boiler was placed in good condition after its arrival. However that may be, either Schaefer paid the rent money under a mistake of law or assumed an obligation to pay the rent until the boiler was fully repaired.
The railroad knew nothing of the contract or arrangements between plaintiff and Schaefer when it received the boiler from Schaefer for shipment to Baltimore, and it is a general rule that a carrier is not chargeable with or liable for special damages resulting from delay in transportation or delivery of goods entrusted to it for shipment, unless notice of the special circumstances rendering prompt delivery and transportation essential is given at or before the time of making the contract of shipment. See annotation, 166 A. L. R., 1034, 1037, and the cases cited therein from the courts of 12 states.
The railroad is liable for its negligence in damaging the boiler, and, since the conceded amount of the damages is $1,575, it owes that sum not to Schaefer, since the trier of the facts found that Schaefer did not pay those damages, but to plaintiff.
If the railroad, because of its negligence, is also liable for any loss of use growing out of the damage to the boiler, it can *428 only be so if there was proof of such damage, and in the present case there is no such proof.
Upon one theory, the railroad could be held for the difference in value of the boiler in good condition when it left Akron and its value in its damaged condition when it arrived in Baltimore, but there is no evidence concerning this.
Upon another theory, the railroad is liable for the reasonable amount for the repairs, which is $1,575, plus the reasonable amount for the loss of use of the boiler. This must be proved, and, since the plaintiff was receiving rent from Schaefer, either under a mistake of law or the assumption of a supposed obligation by Schaefer, the plaintiff offered no proof of loss of use. As a matter of fact, he was negotiating a sale of the boiler prior to June 1, which sale was consummated after the boiler was repaired.
There is no evidence as to the sale price, whether it was larger or smaller at the time the sale was consummated than it would have been if the boiler had been in good condition when it arrived in Baltimore, or of the loss of the use of the money realized from the sale between the time of the boiler’s arrival in Baltimore and the time the sale was consummated. In the absence of any such proof, and in the absence of any knowledge on the part of the railroad of the contract and arrangement between plaintiff and Schaefer, the railroad is' not obligated under the evidence in the record herein to pay more than the $1,575 for the damage to the boiler, for which judgment against the railroad in favor of the plaintiff was given by the Court of Common Pleas.
In affirming the judgment, the Court of Appeals found that no error was manifest and that substantial justice was done, and, since the trial court, as the trier of the facts, was entitled to draw reasonable inferences from the evidence, it was justified in entering the judgment it did.

Judgment affirmed.

Weygandt, C. J., Matthias, Hart, Zimmerman, Bell and Taet, JJ., concur.